1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JEREMIAH D. GRAHAM (SBN 313206)
jd@jdgrahamlegal.com
**|JD| GRAHAM LEGAL**
10089 Willow Creek Road, Suite 200
San Diego, CA 92131
Telephone: (619) 633-5110

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM J. DORSETT, and ROGELIO FLORES,<br><br>                    Plaintiffs,<br>  v.<br><br>THE CITY OF SAN DIEGO, and DOES 1-25, inclusive,<br><br>                    Defendants. | Case Number: 3:24-cv-00813-H-AHG<br><br>FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF<br><br>[Jury Trial Demanded] |

JD

**INTRODUCTION**

1.     It is a matter of well-settled law at the core of the First Amendment to the United States Constitution that artists have a right to publicly express themselves, even if the public may pay them for their artwork. The Plaintiffs in this case are "buskers," artists in San Diego who exercise their First Amendment rights – one by painting and the other by performing magic – to the delight of the public, while asking the public for money to support their art. As detailed below, the Defendants violated the Plaintiff's First Amendment rights through unfounded or pretextual citations for alleged violations of the city code and other arbitrary and unlawful limitations to chill their expressive activity. San Diego has also enacted an unconstitutional new ordinance that compounds its First Amendment violations.

2.     The City of San Diego and its employees deprived Plaintiff William J. Dorsett of his rights when they cited him for a violation of the City code, on February 1, 2023, telling him that his creation and display of his original artwork was not speech protected by the United States Constitution because it was offered for sale.

3.     The City of San Diego and its employees deprived both Plaintiffs William J. Dorsett and Rogelio Flores of their rights when they created arbitrary and unjustified location-based restrictions that limited the reach of their speech.

4.     The City of San Diego and its employees deprived Plaintiff William J. Dorsett of his rights when they selectively enforced—against him and not against others—arbitrary location-based restrictions that limited the reach of his speech.

5.     The City of San Diego deprived both Plaintiffs William J. Dorsett and Rogelio Flores, as well as all members of the public, of their First Amendment rights when it enacted San Diego Municipal Code Article 3, Division 5, Section 63.0501 *et seq.* ("Expressive Activity on Public Property"). This is a facial challenge to parts of that ordinance, which became effective on March 29, 2024. In sum, the ordinance is unconstitutionally vague, which will unlawfully empower city officials and law

enforcement to continue to arbitrarily enforce the law, including against buskers such as Plaintiffs, and deprives the public, including buskers like the plaintiffs, of constitutionally required notice of what is prohibited and what is permissible.

## PARTIES

6.     Plaintiff William J. Dorsett ("Dorsett") is an individual living in San Diego who regularly creates and displays artwork in public. His expressive activity includes live painting, the live creation of palm frond roses, and the display of this artwork.

7.     Plaintiff Rogelio Flores ("Flores") is an individual living in San Diego who regularly performs in public. His expressive activity includes juggling, magic, and side gags.

8.     Defendant City of San Diego ("San Diego") is a political subdivision of the State of California and a body corporate and politic exercising local government powers as specified by the Constitution and the laws of the State of California. At all relevant times, the San Diego Police Department and the San Diego Park and Recreation Department were departments and agencies of San Diego. At all relevant times, San Diego was the employer of DOES 1 through 25.

9.     Plaintiffs do not know the true names and capacities of Defendants sued herein as DOES 1 through 25, and for that reason have sued them by their fictitious names. On information and belief, Plaintiffs allege that each of these fictitiously named Defendants are responsible in some manner for some or all the acts alleged herein. Plaintiffs will amend this Complaint to set forth the true names and capacities of fictitiously named Defendants once ascertained.

10.   Plaintiffs are informed and believe, and thereon allege, that each of the Defendants sued here, including those named herein as Does, are the agents, servants, employees, licensees, guarantees, indemnitors, invitees, or assignees of each other, and in doing the things herein alleged acted within the course and scope of such agency,

First Amended Complaint                                    Case No. 3:24-cv-00813-H-AHG

1  employment, license, guaranty, indemnity, invitation, assignment, and/or relationship
2  and with the full knowledge, consent and approval of the remaining Defendants.

3  **JURISDICTION AND VENUE**

4  11.  The United States District Court for the Southern District of California has
5  jurisdiction over this matter and authority to grant the requested relief pursuant to 28
6  U.S.C. §§ 1331 and 1343 because Plaintiffs allege ongoing violations by Defendants of
7  the rights secured to Plaintiffs by the First and Fourteenth Amendments of the United
8  States Constitution. Plaintiffs seeks damages and injunctive and declaratory relief
9  pursuant to 42 U.S.C. § 1983.

10  12.  Venue is proper in the Southern District under 28 U.S.C. § 1391(b) because
11  all Defendants reside in the district, and the events or omissions giving rise to Plaintiff's
12  claims occurred in this District.

13  **GENERAL ALLEGATIONS**

14  13.  "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two
15  essential elements: (1) that a right secured by the Constitution or laws of the United
16  States was violated, and (2) that the alleged deprivation was committed by a person
17  acting under the color of state law." *Adams v. Deloria*, 443 F. Supp. 3d 1093, 1100 (N.D.
18  Cal. 2020). Section 1983 actions may be brought against a city, such as San Diego, for
19  the actions of its agents. *See Monell v. Department of Social Services of City of New*
20  *York*, 436 U.S. 658, 690 (1978); *Lockett v. County of Los Angeles*, 977 F.3d 737, 741
21  (9th Cir. 2020).

22  **Unconstitutional Harassment of Dorsett for Making & Selling Artwork**

23  14.  "The Supreme Court has been clear that the arts and entertainment constitute
24  forms of expression under the First Amendment." *White v. City of Sparks*, 500 F.3d 953,
25  955 (9th Cir. 2007) (a case about an artist's right to paint in public). Further, "an artist's
26  *sale* of his original artwork constitutes speech protected under the First Amendment."
27  *Id.* at 954. "It is beyond dispute that solicitation is a form of expression entitled to the

28

3

same constitutional protections as traditional speech." *ACLU of Nev. V. City of Las Vegas*, 466 F.3d 784, 792 (9th Cir. 2006). "It is well settled that a speaker's rights are not lost merely because compensation is received; a speaker is no less a speaker because he or she is paid to speak." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 801 (1988).

15.   On or about February 1, 2023, Dorsett was busking—painting and displaying his original artwork for members of the public—on a public sidewalk in Ocean Beach, San Diego, when he was approached by **six** armed officers—employees of the Defendant City of San Diego (three police officers and three park rangers). Dorsett captured this incident on video.[1]

16.   These officers were acting under the color of state law, identifying themselves as on-duty officers, displaying their badges, wearing uniforms, and performing official duties. *See Naffe v. Frey*, 789 F.3d 1030 (9th Cir. 2015) ("An individual acts under color of state law when he or she exercises power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'") (citing *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Davis v. John*, 485 F.Supp.3d 1207, 1216 (C.D. Cal. 2020). For an officer to be acting under color of state law, that officer's actions must be "in some way related to the performance of his official duties." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 838 (9th Cir. 1996).

17.   The officers gave Dorsett a written citation for violating San Diego Municipal Code §§ 36.0103 & 36.0106(a)(ii)(J). A true and correct copy of that citation is attached to this complaint as Exhibit A.

18.   San Diego Municipal Code § 36.0103 requires all "*sidewalk vendors*" to "obtain a *vending permit* prior to *vending* on any *sidewalk*" (italics in the original). San Diego Municipal Code § 36.0106(a)(11)(J) states, in relevant part: (a) No *stationary*

---

[1] This video can be seen at https://www.youtube.com/watch?v=Oeb17HJ71-k (retrieved on June 28, 2024).



First Amended Complaint                                    Case No. 3:24-cv-00813-H-AHG

*sidewalk vendor* shall *vend* and no *roaming sidewalk vendor* shall stop to make sales in the following locations: … (11) within 15 feet of any: … (J) *high-traffic bike and shared use path*" (italics in the original).

19.   However, the vending code that the City cited Dorsett for violating (San Diego Municipal Code Art. 6. Div. 1 § 36.0101 *et seq.*) <u>specifically</u> exempts expressive activities as well as those selling items constituting expressive activities. A true and correct copy of the vending code is attached to this complaint as Exhibit B. Section 36.0113 exempts "[a]ny vendor or individual engaged solely in artistic performances, free speech, political or petitioning activities, or engaged solely in *vending* of items constituting expressive activity protected by the First Amendment[.]"

20.   Thus, by issuing this citation, the City and its employees deprived Dorsett of, and chilled, his First Amendment right to create, display, and sell his paintings, in addition to ignoring the plain text of the City's own ordinance that exempted artistic performances and the vending of items constituting expressive activity protected by the First Amendment—which plainly includes painting and the sale of those paintings.

21.   Three of the six officers made other statements that Dorsett's art was not protected by the First Amendment.

22.   A ranger stated, "We're doing an admin cite for fixed priced on your stuff, vending in this area…"[2]

23.   A police officer told Dorsett that because Dorsett displayed suggested donations for his art, he was not protected by the First Amendment.[3]

24.   Another ranger told Dorsett, "He didn't get you for obstructing the sidewalk, what he got you for was vending… anything that has a labeled price tag on it."[4]

---

[2] *See* video recording, *supra*, note 4 at timestamp 23:50.

[3] *See* video recording, *supra*, note 4 at timestamp 14:35.

[4] *See* video recording, *supra*, note 4 at timestamp 26:55.

First Amended Complaint                                   Case No. 3:24-cv-00813-H-AHG

25.   The City's punishment of Dorsett through the issuance of a citation for the reasons articulated by the city's officers deprived Dorsett of, and chilled, his First Amendment rights. *See White*, *ACLU of Nev.*, and *Riley*, *supra*.

26.   If there was any question that these officers were not acting under color of state law, or at the direction of the City of San Diego, that ranger also stated, "It is not us… it is City Council. City Council changes all the regulations and everything and all we are sent out to do is educate… as it is coming down, that's where all these changes [inaudible]…"[5]

27.   Returning to the elements of a § 1983 action, (1) the City violated Dorsett's right to paint and sell his original artwork, secured by the Constitution of the United States; and (2) a person acting under the color of state law committed the violation of his rights. *See, e.g., Adams v. Deloria*, 443 F. Supp. 3d 1093, 1100 (N.D. Cal. 2020).

**Unconstitutional Location-Based Restrictions**

28.   "Regulation of speech on governmental property that has been traditionally open to the public for expressive activity, such as public streets and parks, is examined under strict scrutiny." *U.S. v. Kokinda*, 497 U.S. 720, 726 (1990).

29.   "Performances on public sidewalks and in public parks—both 'traditional public fora'—are protected under the First Amendment as expressive activity." *Santopietro*, *supra* 73 F.4th at 1023 (9th Cir. 2023) (concerning a busker performing on the Las Vegas Strip).

30.   Public ways and sidewalks "occupy a 'special position in terms of First Amendment protection' because of their historic role as sites for discussion and debate." *McCullen v. Coakley*, 573 U.S. 464, 476 (2014) (citing *United States v. Grace*, 461 U.S. 171, 180 (1983).

31.   "[T]he government bears the burden of justifying a location restriction." *Berger v. City of Seattle*, 569 F.3d 1029, 1048 (9th Cir. 2009) (case about a street

---

[5] *See* video recording, *supra*, note 4 at timestamp 17:35.

6

performer). Restrictions on the time, place and manner of protected speech must (1) be "justified without reference to the content of the regulated speech"; (2) be "narrowly tailored to serve a significant governmental interest"; and (3) "leave open ample alternative channels for communication of the information." *Ward v Rock Against Racism*, 491 U.S. 781, 791 (1989). This applies to restrictions on street performers. *Berger,* 569 F.3d at 1036.

32.   In or around September 2022, while Flores was performing where he usually performed in Balboa Park, on El Prado, park rangers told him he could not perform there. This happened three or four times. The ranger told him there was a designated area with signs which was the only area where Flores could perform. Flores moved at their request, but his reach to the public was severely limited as a result.

33.   The El Prado is an historic public forum in Balboa Park, with an approximately 40-foot-wide pedestrian thoroughfare that opens into large areas, with large intersections. Defendants have sought to exclude Plaintiffs from El Prado and restrict them to other areas of Balboa Park where their reach is limited.

34.   On May 21, 2023, a ranger employed by the City of San Diego, and acting under color of state law, forced Dorsett, under threat of citation, to also move from the historic public busking location on El Prado in Balboa Park to a secluded busking location while Dorsett was creating and displaying art.

35.   On May 29, 2023, Flores was kicked out of the El Prado area of Balboa Park again and moved to a designated "First Amendment" area where there were fewer members of the public.

36.   On November 16, 2023, Flores was busking in Balboa Park on El Prado and a small crowd of about twenty people gathered to watch him. After his show had ended, a Park Ranger approached him and issued three citations.

37.   These types of location-based restrictions are not only being enforced in the El Prado area of Balboa Park, but in public areas across the City, including in La Jolla, Mission Beach Park, Ocean Beach and Pacific Beach

38.   On February 1, 2023, a ranger employed by the City of San Diego, and acting under color of state law, told Dorsett that he had to move from a wide public sidewalk in Ocean Beach, to a grassy area that was crowded with vendors selling goods.

39.   On July 18, 2023, the Chief Park Ranger for the City of San Diego, Michael F. Ruiz, informed Dorsett that he was only allowed to engage in expressive activities in a small area during San Diego Comic Con ("Comic Con") (from July 19 – July 23, 2023). Comic Con, billed as the biggest comic convention in the United States, is held in the San Diego Convention Center in downtown San Diego. When Dorsett arrived at this area, he discovered it was too small to accommodate buskers, and it was overly watered, to the point water was pooling, and the ground was muddy, thus making it impracticable for buskers to communicate with the public. Dorsett observed and recorded that only the grassy area set up for free speech activities was oversaturated with water.[6] Other areas were not over-watered. This area was watered during the night, every night, during Comic Con, to the point that it made it impractical to create or display artwork. The result was that Dorsett earned approximately one third of the amount he had earned at past Comic Cons. After Comic Con ended, Dorsett visited that area and discovered that it was no longer overly watered. On information and belief, the City of San Diego designated a zone for buskers, and then overly watered it to discourage buskers from engaging in expressive activities during Comic Con.

40.   The City of San Diego continues to impose location-based restrictions at the time Plaintiffs are filing this complaint, including confining expressive activity in many public parks to 4-foot by 8-foot marked spaces in undesirable locations.

---

[6] A recording that includes Dorsett's observations over multiple days can be seen at: https://www.youtube.com/watch?v=0xv8VTDfBTw (retrieved on June 28, 2024).

First Amended Complaint                              Case No. 3:24-cv-00813-H-AHG

41.   The City of San Diego's location-based restrictions unconstitutionally turn on the content of a Plaintiffs' speech, burden more speech than necessary, and failed to leave open ample alternative channels for communication by not providing "speakers with exposure." *Camenzind v. California Exposition & State Fair*, 84 F.4th 1102, 1114 (9th Cir. 2023) (location-based restriction justified when placed in "a prime location that provides speakers with exposure to virtually everyone who enters the fairgrounds" with nowhere preferable).

42.   The City's burdens and restrictions on Plaintiffs' protected speech resulted in a dramatic loss of revenue for the plaintiffs due to the reduced exposure to the public.

### Viewpoint Discrimination Through Selective Enforcement

43.   "Once a forum is opened up to assembly or speaking by some groups, government may not prohibit others from assembling or speaking." *Police Dep't of Chi. v. Mosley* 408 U.S. 92, 96 (1972). "[D]iscriminatory enforcement of speech restriction amount[s] to viewpoint discrimination in violation of the First Amendment." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005). Although the Ninth Circuit has often addressed "discriminatory enforcement" claims under the Equal Protection clause rather than the First Amendment, both claims may be available. *Hightower v. City and County of San Francisco*, 77 F.Supp.3d 867, 883 (N.D. Cal. 2014).

44.   On or about May 21, 2023, the City of San Diego pretextually stated that Dorsett was obstructing a public sidewalk in El Prado with a small painting setup even though it left ample room on the sidewalk for members of the public to walk around him. On or around March 1, 2023, the City of San Diego had allowed PETA to take up more than 400-square-feet of a public walkway, also in the El Prado area of Balboa Park, in a way that in fact did obstruct the public walkway.[7] The City of San Diego had told Dorsett that setting up his small display in El Prado was blocking a "fire lane," but they allowed PETA to take up large amounts of space in the same area.

---

[7] PETA's display in the Prado can be seen in this video.
https://www.youtube.com/watch?v=wDYzS7bq5zo (retrieved on June 28, 2024).

First Amended Complaint                                    Case No. 3:24-cv-00813-H-AHG

**Challenge to New Ordinance**

45.   On March 29, 2024, San Diego Municipal Code Article 3, Division 5, Section 63.0501 *et seq*. ("Expressive Activity on Public Property") became effective. A true and correct copy of that ordinance is attached to this complaint as Exhibit C. The provisions of this new law deprive Plaintiffs, and other members of the public, of their First Amendment rights. Plaintiffs challenge that ordinance.

*Provision Regarding Handcrafts and Mass-Produced Art*

46.   Section 63.0505 provides: Vendors of handcrafts or mass-produced visual art and vendors of services shall comply with the Sidewalk Vending Regulations in Chapter 3, Article 6, Division 1, for all vending activities in parks, plazas, beach areas, and on sidewalks that are not otherwise authorized by a special event permit, lease, or other advance written approval by the City Manager…"

47.   The term "mass-produced" is undefined.

48.   Dorsett paints several paintings and displays them while he is busking. The statute is facially unconstitutional, or vague, because it does not put the public on notice as to what conduct is prohibited, for example, how many paintings an artist can create before he has broken the law.

49.   Further, the common understanding of the word mass-produced is something that is manufactured in large quantities by an automated mechanical process, and yet the ordinance applies "mass-produced" to things that are expressly not machine made, because it applies it to art that is created by "the use of brush, pastel, crayon, pencil, stylus or other object." §630.0502 (definition of visual art). This ambiguity precludes notice of what the ordinance prohibits.

50.   The term "handcrafts" is defined as "objects made either by hand or with the help of devices used to shape or produce the objects through such methods as weaving, carving, stitching, sewing, lacing, welding, or beading, including necklaces, earrings, bracelets, rings, and other jewelry used or intended for personal adornment, pottery,

silver or metal work, leather goods, and trinkets. Handcrafts are objects not likely to communicate a message, idea, or concept to others, are often mass-produced or produced with limited variation, and often have functional utility apart from any communicative value they might have." §63.0502.

51.   One of Dorsett's pieces of art is a rose made by hand from palm fronds, which may fit this definition of a handcraft.

52.   The term "services' is defined as "activities involving the performance of work for others or the provision of intangible items that cannot be returned once they are provided. Examples include hair braiding, face painting, massage, yoga, fortune telling, tattooing, and dog training."

53.   Flores performs a magic show. His magic show is a "performance of work for others" and the "provision of intangible items that cannot be returned once they are provided." (Notably, the terms "intangible items" and "performance of work" are not defined in the statute).

54.   The problem with all three facets of this statute is that, as applied to Plaintiffs, it subjects them to the "Sidewalk Vending Regulations in Chapter 3, Article 6, Division 1." Those Sidewalk Vending Regulations provide an exemption for expressive activities which, as discussed in paragraph 19, *supra*, the City has not recognized during its enforcement actions with respect to Plaintiff's expressive activities. *See* San Diego Municipal Code Ch. 3, Art. 6, Div. 1 § 36.0113.

55.   So, in effect, the City is either stating that Dorsett's visual art and handcrafts, and Flores' services are not expressive activities or §63.0505 is so vague that it "clearly fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited," the "enforcement of the ordinance poses a danger of arbitrary and discriminatory application," and "this lack of clarity may operate to inhibit the exercise of freedom of expression because individuals will not know whether the ordinance

First Amended Complaint                                    Case No. 3:24-cv-00813-H-AHG

1  allows their conduct, and may choose not to exercise their rights for fear of being
2  criminally punished." Hunt v. City of Los Angeles, 638 F.3d 703, 712 (9th Cir. 2011).

3      56. Thus, this provision either states that Plaintiffs' art, as services, handcrafts,
4  and mass-produced visual art, are not expressive activity and subject to regulation like
5  the sale of commercial goods, or it is impermissibly vague and will chill Plaintiffs' First
6  Amendment-protected activity.

7                          *Provisions Forbidding Sale*

8      57.  Section 63.0503(b) provides: "Any person engaged in *expressive activity*
9  shall not… (2) display any merchandise for sale on the ground or on any *above-ground*
10  *structure*…"

11      58.  The word "merchandise" is undefined.

12      59.  The First Amendment protects the sale of artwork. *See White v. City of*
13  *Sparks*, 500 F.3d 953, 954 (9th Cir. 2007). Criminalizing the sale of artwork deprives
14  the Plaintiffs, and all members of the public, of their First Amendment rights.

15      60.  On its public website[8] it interprets the new regulations to forbid "sales,"
16  stating, "Expressive activity locations are not designated for sidewalk vending **or sales**
17  and are strictly for expressive activities." (emphasis added) And then it doubles down,
18  stating "Expressive activity does not include… the sale or creation of handcrafts… or
19  the creation or sale of mass-produced merchandise **or visual art**." (emphasis added).

20      61.  Dorsett paints and displays his artwork for sale. Dorsett cannot set up a table
21  or easel "on the ground" in San Diego and sell his artwork without exposing himself to
22  a citation and fine.

23      62.  Thus, §63.0503(b) "clearly fails to give a person of ordinary intelligence a
24  reasonable opportunity to know what is prohibited," the "enforcement of the ordinance
25  poses a danger of arbitrary and discriminatory application," and "this lack of clarity may

26

27  _____
[8] Publicly available at https://www.sandiego.gov/park-and-recreation/parks/expressive-activity-parks
28  (retrieved on April 26, 2024). A true and correct printout of the version posted on April 26, 2024 has
    been attached to this complaint as Exhibit D.



First Amended Complaint                    Case No. 3:24-cv-00813-H-AHG

operate to inhibit the exercise of freedom of expression because individuals will not know whether the ordinance allows their conduct, and may choose not to exercise their rights for fear of being criminally punished." *Hunt v. City of Los Angeles*, 638 F.3d 703, 712 (9th Cir. 2011).

63.   This provision should be enjoined because it either forbids the sale of artwork, or it is impermissibly vague and will chill the sale of artwork.

### Damages

64.   Before Defendants' recent enforcement efforts, Dorsett was regularly earning approximately $1,000 per day while busking. Since Defendants started enforcing their vending codes against him, his earnings have dropped to approximately $100 per day. And that is when he *can* busk, because Defendants have caused Dorsett anxiety that hinders his ability to leave his house.

65.   For example, during December Nights in 2023, from December 1-2, Dorsett earned $200 per night. During December Nights in 2022, from December 2-3, Dorsett had earned $1200. The only difference was that in 2022, Dorsett was allowed to set up in the El Prado area. In 2023, Defendants forced him to set up outside of the area of the event. There had been no intervening change in the law, as the vending ordinance that applied during both events became effective on June 22, 2022.

66.   Flores has also lost substantial earnings since Defendants started infringing his rights, reducing his earnings from busking from approximately $250 per day to approximately $120 per day.

### FIRST CLAIM FOR RELIEF

### Free Speech Clause of the First Amendment to the U.S. Constitution
### (42 U.S.C. § 1983)

(Against all Defendants)

67.   Plaintiffs allege and incorporate by reference every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

68. "[T]he Supreme Court has been clear that the arts and entertainment constitute protected forms of expression under the First Amendment." *White v. City of Sparks*, 500 F.3d 943, 955 (9th Cir. 2007). And "the degree of First Amendment protection is not diminished merely because the [protected expression] is sold rather than given away." *Id.* at 956 (citing *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 756 n. 5 (1988); and *Riley v. Nat'l Fed'n of the Blind of N.C.*, 487 U.S. 781, 801 (1988) ("It is well settled that a speaker's rights are not lost merely because compensation is received; a speaker is no less a speaker because he or she is paid to speak.")); *see also Berger v. City of Seattle*, 569 F.3d 1029, 1050 (9th Cir. 2009) ("Speech that solicits funds is protected by the First Amendment.").

69. A content-based speech regulation in a traditional public forum is subject to strict scrutiny and will be upheld only if it is narrowly drawn to serve a compelling governmental interest." *Santa Monica Nativity Scenes Committee v. City of Santa Monica*, 784 F.3d 1286, 1292 (9th Cir. 2015).

70. Dorsett's busking activities, consisting of creating and displaying artwork for sale are protected by the First Amendment.

71. Flores' busking activities, consisting of a magic show performed in public for monetary donations, are protected by the First Amendment.

72. As described herein, the City of San Diego:

    a. Told Dorsett that the sale of his artwork was not protected by the First Amendment (¶¶ 14-27, *supra*),

    b. Created a regime of location-based restrictions to prevent both Plaintiffs from speaking (¶¶ 28-42, *supra*),

    c. Engaged in selective enforcement (¶¶ 43-44), and

    d. Created laws and policies that chill the exercise of Plaintiffs' First Amendment Rights (¶¶ 45-63).

First Amended Complaint          Case No. 3:24-cv-00813-H-AHG

73.   Defendants' enforcement activities and communications, as set forth herein, have thus deprived Dorsett and Flores of their free speech rights in public spaces, including the sidewalks and streets of Balboa Park, Ocean Beach, La Jolla, Mission Beach, Pacific Beach, and other areas of the City of San Diego, which constitute public forums.

74.   Plaintiffs are entitled to damages under 42 U.S.C. § 1983.

75.   Pursuant to 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. § 2201, Plaintiff is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief.

76.   Plaintiff found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**SECOND CLAIM FOR RELIEF**

**Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution**

**(42 U.S.C. § 1983)**

(Against all Defendants)

77.   Plaintiffs allege and incorporate by reference every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

78.   "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *ArchitectureArt, LLC v. City of San Diego*, 231 F. Supp. 3d 828, 844 (S.D. Cal. 2017), aff'd, 745 F. App'x 37 (9th Cir. 2018) (citing *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432 (1985)).

79.   Defendants' enforcement had a discriminatory effect, and the Defendants were motivated by a discriminatory purpose. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 920 (9th Cir. 2012).

15



First Amended Complaint

Case No. 3:24-cv-00813-H-AHG

1    80.   While enforcing against Plaintiffs, Defendants did not enforce against
2    PETA, and others. PETA, and others, were "similarly situated" entities that "could have
3    been prosecuted but were not." *United States v. Armstrong*, 517 U.S. 456, 469 (1996).

4    81.   "[P]laintiffs are generally required to show the existence of an
5    unconstitutional policy by extrapolating from a series of enforcement actions. They must
6    argue, in effect, that these actions demonstrate that the municipality is enforcing against
7    them a rule that is distinct from the constitutionally valid enactment… Often, the only
8    way to establish whether [an unconstitutional] policy exists is to extrapolate from
9    enforcement data." *Hoye v. City of Oaklsand*, 653 F.3d 835, 855 (9th Cir. 2011).

10    82.   Defendants purpose was unlawful because they decided to enforce the law
11    against Plaintiffs because their speech was disfavored, while PETA's speech was
12    favored speech. This was the result of an intentional policy or practice to limit
13    Defendants' speech, while promoting more favored speech.

14    83.   An unconstitutional policy must exist, otherwise Defendants would not have
15    allowed PETA, and others, to do what Defendants have cited Plaintiffs for doing.

16    84.   Plaintiffs are entitled to damages under 42 U.S.C. § 1983.

17    85.   Pursuant to 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. § 2201, Plaintiff is
18    entitled to declaratory relief and temporary, preliminary, and permanent injunctive
19    relief.

20    86.   Plaintiff found it necessary to engage the services of private counsel to
21    vindicate their rights under the law. Plaintiff is therefore entitled to an award of
22    attorneys' fees pursuant to 42 U.S.C. § 1988.

23                         **THIRD CLAIM FOR RELIEF**

24    **Due Process Clause of the Fourteenth Amendment to the U.S. Constitution**

25                              **(42 U.S.C. § 1983)**

26    87.   Plaintiffs allege and incorporate by reference every allegation set forth in the
27    preceding paragraphs of this Complaint as if fully set forth herein.

28



First Amended Complaint                                    Case No. 3:24-cv-00813-H-AHG

88. The City of San Diego's Municipal Code—specifically San Diego Municipal Code Article 3, Division 5, Section 63.0501 *et seq.* ("Expressive Activity on Public Property")—and Defendants' enforcement thereof violate the Due Process Clause of the Fourteenth Amendment, both facially and as-applied to Plaintiffs.

89. A regulation is constitutionally void on its face when, as matter of due process, it is so vague that persons "of common intelligence must necessarily guess at its meaning and differ as to its application" *Connally v. General Const. Co.*, 269 U.S. 385, 391 (1926); *People ex rel. Gallo v. Acuna*, 14 Cal.4th 1090, 1115 (1997). The void for vagueness doctrine is designed to prevent arbitrary and discriminatory enforcement. The problem with a vague regulation is that it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis...." *Grayned v. City of Rockford*, 408 U.S. 104, 108–109 (1972).

90. The City's new ordinance is void for vagueness because it "clearly fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited," the "enforcement of the ordinance poses a danger of arbitrary and discriminatory application," and "this lack of clarity may operate to inhibit the exercise of freedom of expression because individuals will not know whether the ordinance allows their conduct, and may choose not to exercise their rights for fear of being criminally punished." *Hunt v. City of Los Angeles*, 638 F.3d 703, 712 (9th Cir. 2011).

91. The City's new ordinance, as applied to Plaintiffs, is unconstitutionally vague because (1) it does not define the term "merchandise," which is subject to regulation; (2) it does not define the term "mass produced," the kind of merchandise subject to regulation; and (3) it is internally contradictory in that it refers to regulation of "mass produced" items that are made through "the use of brush, pastel, crayon, pencil, stylus or other object."

92. And even the City's vending ordinance is impermissibly vague. *See* Paragraph 19, *supra*. It regulates and forbids everything except art, politics, and

activities protected by the First Amendment.  This is impossibly vague and ambiguous – and is content based.

93.   Plaintiffs are entitled to damages under 42 U.S.C. § 1983.

94.   Pursuant to 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. § 2201, Plaintiff is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of these provisions of the Municipal Code.

95.   Plaintiff found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request that judgment be entered against Defendants as follows:

a.   An entry of judgment declaring that the Defendants' actions are unconstitutional under the First Amendment to the U.S. Constitution, as applied to Plaintiffs, under 42 U.S.C. §§ 1983 & 1988, and 28 U.S.C. § 2201;

b.   An entry of a judgment declaring Plaintiffs' right to busk in San Diego free from official harassment, intimidation, fines, and arrest, under 42 U.S.C. §§ 1983 & 1988, and 28 U.S.C. § 2201;

c.   An entry of a judgment declaring that Dorsett's sale of his artwork is protected by the First Amendment, under 42 U.S.C. §§ 1983 & 1988, and 28 U.S.C. § 2201;

d.   An entry of a judgment declaring Flores' magic show is protected by the First Amendment, under 42 U.S.C. §§ 1983 & 1988, and 28 U.S.C. § 2201;

e.   An entry of a judgment declaring that San Diego Municipal Code Article 3, Division 5, Sections 63.0503(b) & 63.0505 are impermissibly vague, under 42 U.S.C. §§ 1983 & 1988, and 28 U.S.C. § 2201;

f.   An injunction forbidding the enforcement of San Diego Municipal Code Article 3, Division 5, Sections 63.0503(b) & 63.0505;

18

g. An injunction forbidding Defendants from classifying and treating Plaintiffs' busking as unprotected commercial speech or vending;

h. An injunction forbidding Defendants from restricting the location of Plaintiffs' busking to areas without exposure to the public;

i. An injunction forbidding Defendants from discriminating against Plaintiffs through selective enforcement of San Diego Municipal Code Article 3, Division 5, Section 63.0501 *et seq.*, and other statutes;

j. An award of damages according to proof at trial;

k. An award of attorney's fees and costs pursuant to 42 U.S.C. § 1988;

l. For such other further relief as the Court may deem just and proper.

Date: June 28, 2024                    |JD| GRAHAM LEGAL

By:/s/ Jeremiah D. Graham
       Jeremiah D. Graham
       |JD| GRAHAM LEGAL
       10089 Willow Creek Road, Suite 200
       San Diego, CA 92131
       Telephone: (619) 633-5110
       *Counsel for Plaintiffs*



First Amended Complaint                    Case No. 3:24-cv-00813-H-AHG

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all claims in this action of all issues so triable.

Date: June 28, 2024                    **|JD| GRAHAM LEGAL**

By:/s/ Jeremiah D. Graham

First Amended Complaint                    Case No. 3:24-cv-00813-H-AHG