# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

WILLIAM J. DORSETT, and
ROGELIO FLORES,

                                    Plaintiffs,

v.

THE CITY OF SAN DIEGO, and DOES
1-25, inclusive,

                                    Defendants.

Case No.:  24-cv-00813-AJB-AHG

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

**(Doc. No. 6.)**

Before the Court is Defendant City of San Diego's ("Defendant" or "City") motion to dismiss Plaintiffs William J. Dorsett and Rogelio Flores's ("Plaintiffs") First Amended Complaint, (Doc. No. 5, "FAC"). (Doc. No. 6.) The motion is fully briefed. (*See* Doc. Nos. 6, 8, 9.) For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss.

/ / /

/ / /

/ / /

/ / /

/ / /

## I.    BACKGROUND[1]

Plaintiffs are "buskers," or street artists and performers. (FAC ¶ 1.) Plaintiff William J. Dorsett paints and creates palm frond roses, "rose[es] made by hand from palm fronds," which he sells. (*Id.* ¶¶ 6, 51.) Plaintiff Rogelio Flores juggles and performs magic shows. (*Id.* ¶ 7.)

**Plaintiff Dorsett**

### A. Ocean Beach

On February 1, 2023, Dorsett was busking—painting and displaying his artwork for sale on a display table—on a public sidewalk in Ocean Beach, San Diego. (*Id.* ¶ 15.) Three City park rangers and three police officers approached him. (*Id.*) A park ranger informed Dorsett that he had to move his art display and table from the sidewalk to a grassy location, an area designated by the City for First Amendment activities, which Plaintiff alleges was crowded with other vendors selling goods. (*Id.* ¶ 38.) Plaintiff also alleges that the park rangers and police officers told him that his art was not speech protected by the First Amendment because he offered his art for sale. (*Id.* ¶¶ 2, 22–24.) The park rangers issued Dorsett a written Sidewalk Vending Administration Citation ("citation") for 1) vending without a permit in violation of San Diego Municipal Code ("SDMC") § 36.0103, and 2) vending on a sidewalk within 15 feet of a high-traffic bike and shared use path in violation of SDMC § 36.0106(a)(11)(J). (*Id.* ¶ 17.)[2] The citation instructs Dorsett to "obtain [a] sidewalk vending permit for any vending activities." (Doc. No. 5-1 (citing SDMC § 36.0103).)

/ / /

/ / /

---

[1] The following facts are taken from Plaintiff's FAC, which the Court construes as true for the limited purpose of resolving the instant motion. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

[2] SDMC § 36.0103 requires all sidewalk vendors to obtain a vending permit prior to vending on any sidewalk. (FAC ¶ 18.) SDMC § 36.0106(a)(11)(J) states, in relevant part: "(a) No stationary sidewalk vendor shall vend and no roaming sidewalk vendor shall stop to make sales in the following locations: … (11) within 15 feet of any: … (J) high-traffic bike and shared use path." (*Id.*)

## B. El Prado, Balboa Park

On May 21, 2023, Dorsett was busking in El Prado in Balboa Park. (FAC ¶ 34.) El Prado is a "historic public busking location," comprised of an approximately 40-foot-wide pedestrian throughfare "that opens into large areas, with large intersections." (*Id.* ¶¶ 33–34, 44.) While Dorsett was busking, a City park ranger "forced Dorsett, under threat of citation," to move from El Prado "to a secluded busking location[.]" (*Id.* ¶ 34.) The ranger informed Dorsett that he was obstructing a public sidewalk and blocking a fire lane (*id.* ¶ 44), yet Plaintiff alleges his "small painting set up . . . left ample room on the sidewalk for members of the public to walk around him" (*id.*). On March 1, 2023, Dorsett observed a People for the Ethical Treatment of Animals (PETA) demonstration, "tak[ing] up more than 400-square-feet of a public walkway, also in the El Prado area of Balboa Park, in a way that in fact did obstruct the public walkway." (*Id.*)

From December 1-2, 2023, during December Nights in Balboa Park, Dorsett alleges that he was not permitted to set up his art displays in El Prado, as he had done in December 2022. (*Id.* ¶ 65.) Dorsett alleges that because the City "forced him to set up outside of the area of the [December Nights] event," during the 2023 December Nights held from December 1-2, 2023, he earned approximately $400 compared to the approximately $1,200 he earned during the 2022 December Nights held from December 2-3, 2022. (*Id.*) The same vending ordinance was in effect during both the 2022 and 2023 December Nights events. (*Id.*)

## C. Comic Con

On July 18, 2023, a day prior to the start of the five-day San Diego Comic Con event ("Comic Con"), the City Chief Park Ranger, Michael F. Ruiz, informed Dorsett that he was only permitted to engage in expressive activities during Comic Con in a City-designated area near the San Diego Convention Center, where Comic Con is held. (*Id.* ¶ 39.) Upon arrival to the designated grassy area, Dorsett alleges that he observed it was "too small" to accommodate buskers. (*Id.*) He also found that the grass was over-watered to the extent that water was pooling on the sidewalk and the ground was muddy. (*Id.*) During the 2023

24-cv-00813-AJB-AHG

Comic Con event, Dorsett earned approximately one-third of the amount that he previously earned at past Comic Con events from selling his art. (*Id.*) Dorsett alleges the City "overly watered" the designated zone for buskers "to discourage buskers from engaging in expressive activities during Comic Con." (*Id.*)

**Plaintiff Flores**

### A.    El Prado, Balboa Park

Flores performs magic shows for the public for monetary donations. (*Id.* ¶¶ 53, 71.) On several occasions in September 2022, and on May 29, 2023, while Flores was performing his magic show in Balboa Park, on El Prado, park rangers informed him that he could not perform on El Prado, and instead directed him to a City-designated "First Amendment" area. (*Id.* ¶¶ 32, 35.) Flores alleges that his reach to the public while performing at the designated "First Amendment" area was severely limited compared to his reach on El Prado. (*Id.*) On November 16, 2023, Flores was busking in Balboa Park on El Prado and a group of approximately twenty people gathered to watch him. (*Id.* ¶ 36.) After his show concluded, a park ranger issued Flores three citations.[3] (*Id.*) Flores alleges that enforcement of the City's vending ordinances led to the reduction of his earnings from busking from approximately $250 per day to approximately $120 per day. (*Id.* ¶ 66.)

**Sidewalk Vending Ordinance & Expressive Activity Ordinance**

Plaintiffs challenge the constitutionality of two sets of City regulations. First, Plaintiffs challenge Ordinance No. 21459, SDMC Chapter 3, Article 6, Division 1, Sidewalk Vending (§§ 36.101-36.0116) (the "Sidewalk Vending Ordinance"), that includes a vending permit requirement (SDMC § 36.0103), and a vending locations provision (*id.* § 36.0106). (*See* Doc. No. 5-2.) The Sidewalk Vending Ordinance came into effect on June 22, 2022, and requires all sidewalk vendors to obtain a vending permit prior to vending on any sidewalk. (*Id.* § 36.0103(b).) Section 36.0106 additionally stipulates, "[n]o stationary sidewalk vendor shall vend . . . within 15 feet of any . . . high-traffic

---

[3] Plaintiffs do not allege the specific content of the three citations. (*See generally* FAC.)

sidewalk . . . or high-traffic bike and shared use path." (*Id.* § 36.0106 (a).) At the time Plaintiffs were cited, the Sidewalk Vending Ordinance exempted "[a]ny vendor or individual engaged solely in artistic performances, free speech, political or petitioning activities, or engaged solely in *vending* of items constituting expressive activity protected by the First Amendment . . . [.]" (*Id.* § 36.0113.) The law stated that these "activities are exempt from the requirements of this Division." (*Id.*)

Plaintiffs allege that the City impermissibly enforced the Sidewalk Vending Ordinance by issuing citations to Plaintiffs for vending without permits while Plaintiffs were engaged in exempted First Amendment protected activities. (FAC ¶¶ 67–76.) Plaintiffs also allege that the City's selective enforcement of the Sidewalk Vending Ordinance, by allowing PETA to demonstrate in El Prado, in Balboa Park, but not permitting Plaintiffs to busk in the same area, violates the Equal Protection Clause of the Fourteenth Amendment. (*Id.* ¶ 73). Finally, Plaintiffs allege the Sidewalk Vending Ordinance is unconstitutionally vague and contradictory in violation of the Due Process Clause of the Fourteenth Amendment. (*Id.* ¶ 92.)

Second, Plaintiffs facially challenge SDMC Article 3, Division 5, Section 63.0501 *et seq.*, titled, Expressive Activity on Public Property ("Expressive Activity Ordinance"), which went into effect on March 29, 2024. (*Id.* ¶ 45.) Pursuant to the Expressive Activity Ordinance, the City Manager may designate "expressive activity areas" available on a first-come, first-served basis "to persons who desire to use equipment, including a table, easel, stand, chair, umbrella, sunshade, or other furniture as part of the expressive activity" without a permit. (Doc. No. 5-3, SDMC § 63.0504.) In other words, the Expressive Activity Ordinance exempts individuals engaged in expressive activity from the vending permit requirement under the Sidewalk Vending Ordinance *if* they conduct expressive activity in a City-designated area for expressive activity. (Doc. No. 9 at 6.) The Expressive Activity Ordinance aims to address unregulated expressive activity, which the City Council found "has led to challenges for first responders to access emergency situations, has intensified competing interests in available space, . . . has increased the incidents of physical

altercations among sidewalk vendors and persons engaged in expressive activity . . . [and] has . . . limited the accessibility of common walkways and the safe flow of pedestrian and other traffic in some areas." (Doc. No. 5-3, SDMC § 63.0501(a).)

Plaintiffs allege the Expressive Activity Ordinance is an unconstitutional time, place, and manner restriction that violates the Free Speech Clause of the First Amendment because the designated "expressive activity areas" are in undesirable, lower-populated locations than the areas where Plaintiffs seek to busk. (FAC ¶¶ 67–76.) Additionally, Plaintiffs challenge the Expressive Activity Ordinance as unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment because it lacks clarity of what conduct is prohibited, leading to arbitrary enforcement and the chilling of free expression. (*Id.* ¶¶ 5, 91.)

**Pleadings**

On May 8, 2024, Plaintiffs filed a complaint against Defendants City of San Diego (the "City") and Does 1-25. (Doc. No. 1.) On June 28, 2024, Plaintiffs filed their First Amended Complaint. (Doc. No. 5.) Plaintiffs bring three claims for: (1) violations of the Free Speech Clause of the First Amendment to the U.S. Constitution (42 U.S.C. § 1983); (2) violations of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution (42 U.S.C. § 1983); and (3) violations of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution (42 U.S.C. § 1983). (*Id.* ¶¶ 67–95.)

Defendant City of San Diego filed a motion to dismiss Plaintiffs' FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 6.) The motion is fully briefed. (Doc. Nos. 6, 8, 9.) The Court, pursuant to its discretion under Local Rule 7.1(d)(1), submitted the motion on the parties' papers. (Doc. No. 11.) For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss Plaintiffs' FAC.

## II.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *See Navarro v. Block*, 250 F.3d 729, 732

(9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for (1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true and drawing all reasonable inferences in favor of the nonmoving party. *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 664. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations and citation omitted).

## III.    THE CITY'S REQUESTS FOR JUDICIAL NOTICE

The City requests that the Court take judicial notice of four items: (1) SDMC Chapter 3, Article 6, Division 1, Sidewalk Vending (§§ 36.0101-36.0116) (the "Sidewalk Vending Ordinance"); (2) SDMC Chapter 6, Article 3, Division 5 Expressive Activity on Public Property (§§ 63.0105-63.0506) (the "Expressive Activity Ordinance"); (3) Cal. Code Regs title 24, Part 9, §§ 503.2.1-503.2.2, 503.4 - Fire Apparatus Access Roads; and (4) the City of San Diego's "Expressive Activity in Parks" website along with the Area Maps available

on the web page.[4] (Doc. No. 9-1.)

Under the Federal Rules of Evidence, courts may take judicial notice of a "fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Because "[m]unicipal ordinances are proper subjects for judicial notice," *Tollis v. County of San Diego*, 505 F.3d 935, 938 n.1 (9th Cir. 2007), the Court **GRANTS** Defendant's request for judicial notice of (1) the Sidewalk Vending Ordinance; (2) the Expressive Activity Ordinance; and (3) Cal. Code Regs title 24, Part 9, §§ 503.2.1-503.2.2, 503.4 - Fire Apparatus Access Roads. Additionally, the Court takes judicial notice of the City's publicly available Parks & Recreation webpage titled, "Expressive Activity in Parks" and the corresponding Area Maps available on the City's website, (Doc. Nos. 9-2–9-13), because they were "made publicly available by [the City], and neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Accordingly, the Court **GRANTS** Defendant's request for judicial notice in its entirety.

## IV. DISCUSSION

The City moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' FAC with prejudice. (Doc. No. 6.) Specifically, the City argues that: (1) Plaintiffs' "applied" challenges to the City's Sidewalk Vending Ordinance fail because the ordinance is constitutional and was not enforced in a discriminatory manner, (*id.* at 14–15; *see also* Doc. No. 9 at 2–10); (2) Plaintiffs were not harassed while performing their trades because Plaintiffs were "operating on or adjacent to" fire lanes, (Doc. No. 6 at 7–9); and (3) Plaintiffs' facial challenge to the Expressive Activity Ordinance fails because the ordinance is well defined, (*id.* at 11).

---

[4] The "Expressive Activity in Parks" website is available at https://www.sandiego.gov/park-and-recreation/parks/expressive-activity-parks.

First, the Court considers whether Plaintiffs' alleged busking is protected as First Amendment expressive activity. Then, the Court examines Plaintiffs' as-applied challenge to the Sidewalk Vending Ordinance, which went into effect on June 22, 2022, and was subsequently amended in 2024. Finally, the Court addresses the sufficiency of Plaintiffs' facial challenge to the Expressive Activity Ordinance, which went into effect on March 29, 2024.

## A.    Plaintiffs' Expressive Activity

"The First Amendment, applied to the states through the Fourteenth Amendment, prohibits laws 'abridging the freedom of speech,'" including pure speech and other expressive conduct. *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1058 (9th Cir. 2010) (citing U.S. Const. Amend. I). "Performances on public sidewalks and in public parks . . . are protected under the First Amendment as expressive activity." *Santopietro v. Howell*, 73 F.4th 1016, 1023 (9th Cir. 2023) (quoting *Berger v. City of Seattle*, 569 F.3d 1029, 1035–36 (9th Cir. 2009)). Additionally, an artist's original painting is protected under the First Amendment, and selling one's original art does not remove it from the ambit of protected expression. *White v. City of Sparks*, 500 F.3d 953, 954, 956–57 (9th Cir. 2007) ("We hold that an artist's sale of his original artwork constitutes speech protected under the First Amendment."); *see also City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 756 n.5 (1988) ("[T]he degree of First Amendment protection is not diminished merely because the [protected expression] is sold rather than given away.") Accordingly, Dorsett's creation and sale of his original paintings and Flores's performances in public parks and on public sidewalks are expressive activities protected under the First Amendment. *See White,* 500 F.3d at 954; *Santopietro*, 73 F.4th at 1023.

Nevertheless, expressive activity can be "subject to reasonable time, place, or manner restrictions." *Santopietro*, 73 F.4th at 1023. The Court proceeds by examining Plaintiffs' challenges to the City's Sidewalk Vending Ordinance and Expressive Activity Ordinance.

/ / /

### B.    Plaintiffs' As-Applied First Amendment Challenge to the Sidewalk Vending Ordinance (Count I)

"An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others." *Project Veritas v. Schmidt*, No. 22-35271, 2025 WL 37879, at *4 (9th Cir. Jan. 7, 2025) (quoting *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998)). "The underlying constitutional standard, however, is no different th[a]n in a facial challenge." *Legal Aid Servs. of Oregon v. Legal Servs. Corp.*, 608 F.3d 1084, 1096 (9th Cir. 2010).

### 1.  Expressive Activity Exemption from Sidewalk Vending Ordinance

Plaintiffs' as-applied First Amendment challenge of the Sidewalk Vending Ordinance centers around Plaintiffs' allegation that the City impermissibly cited Plaintiffs for engaging in protected expressive activity that the Sidewalk Vending Ordinance specifically exempted. (*See* FAC ¶¶ 19–20 (citing SDMC § 36.0113).) Plaintiffs allege by issuing citations to Dorsett and Flores for busking without a permit in public fora, the City "ignor[ed] the plain text of the City's own ordinance that exempted artistic performances and the vending of items constituting expressive activity protected by the First Amendment" and "deprived . . . and chilled [Plaintiffs'] First Amendment right[s]." (*Id.* ¶ 20.) Setting aside Defendant's affirmative defense that Plaintiffs were impermissibly busking on or adjacent to established fire lanes, which the Court addresses below, the City does not mention Plaintiffs' exemption argument in its motion to dismiss. (*See generally* Doc. No. 6.)

The Sidewalk Vending Ordinance requires "all sidewalk vendors" to "obtain a vending permit prior to vending on any sidewalk." (Doc. No. 5-2, SDMC § 36.0103). "Sidewalk vendor" is defined as "a person who sells goods from vending equipment or from one's person upon a sidewalk. It includes both roaming sidewalk vendors and stationary sidewalk vendors." (*Id.* § 36.0102.) Defendant does not dispute that at the time Plaintiffs were cited, the Sidewalk Vending Ordinance's "Non-Applicability" section

expressly exempted "[t]he following persons, entities or activities . . . from the requirements of this Division" including "[a]ny vendor or individual engaged solely in artistic performances . . . [or] . . . *vending* of items constituting expressive activity protected by the First Amendment . . . [.]" (*Id.* § 36.0113.) Dorsett and Flores allege receiving citations before the Expressive Activity Ordinance went into effect on March 29, 2024, (FAC ¶ 45), and neither Plaintiffs nor Defendant assert that a different regulation was in effect at the time Plaintiffs received citations that restricted expressive activity in public fora.

"Although street performances are subject to reasonable time, place, and manner restrictions, [the Ninth Circuit] ha[s] never upheld a law that subjects individuals or small groups who wish to engage in non-commercial expressive activity in public fora to advance notice and permitting requirements." *Santopietro*, 73 F.4th at 1023 (citing *Berger*, 569 F.3d at 1036, 1039). This is because "the significant governmental interest justifying the unusual step of requiring citizens to inform the government in advance of expressive activity has always been understood to arise only when large groups of people travel together on streets and sidewalks." *Santa Monica Food Not Bombs v. City of Santa Monica*, 540 F.3d 1022, 1039 (9th Cir. 2006).

Here, both Plaintiffs allege the City issued citations to Plaintiffs for engaging in expressive activity in public fora without permits, in apparent disregard of the Sidewalk Vending Ordinance's "Non-Applicability" section that exempted expressive activity. Dorsett received a citation on February 1, 2023 for selling his art without a permit on a public sidewalk in Ocean Beach, (FAC ¶¶ 15–17), and Flores received three citations on November 16, 2023 following his magic performance on El Prado in Balboa Park, (*id.* ¶ 36). Public sidewalks and Balboa Park are public fora. *See Am. C.L. Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1099 (9th Cir. 2003) ("The quintessential traditional public forums are sidewalks, streets, and parks."); *see also Kreisner v. City of San Diego, Cal.*, 788 F. Supp. 445, 454 (S.D. Cal. 1991), *opinion amended and superseded on denial of reh'g*, 1 F.3d 775 (9th Cir. 1993), and *aff'd sub nom. Kreisner v. City of San Diego*, 1

F.3d 775 (9th Cir. 1993) (Balboa Park is a "traditional public forum.")

As alleged, the City enforced the Sidewalk Vending Ordinance as requiring Plaintiffs to obtain individual permits before engaging in expressive activities on the public sidewalks at Ocean Beach or in the El Prado area of Balboa Park. (FAC ¶¶ 15–17, 36.) "[B]ut any such requirement would run squarely afoul of *Berger*'s central holding, that a permitting scheme that 'requires single individuals to inform the government of their intent to engage in expressive activity in a public forum, a requirement that neither [the Ninth Circuit] nor the Supreme Court has *ever* countenanced,' is not permissible." *Santopietro*, 73 F.4th at 1023 (quoting *Berger*, 569 F.3d at 1036, 1039). To the extent a different regulation resembling the Expressive Activity Ordinance was in effect at the time Plaintiffs were cited that permitted the City to direct individuals without permits to engage in expressive activity in alternative "free expression" locations, the City has not cited to any such regulation, and it is not before the Court. Accordingly, because Plaintiffs allege receiving citations for engaging in protected First Amendment expressive activity in public fora without permits, Plaintiffs' as-applied First Amendment challenge to the Sidewalk Vending Ordinance withstands Defendant's motion to dismiss.

### 2. Affirmative Defense of Unclean Hands

In its motion to dismiss, the City asserts that when Dorsett and Flores received citations for busking without permits in violation of the Sidewalk Vending Ordinance in Ocean Beach, and on El Prado, in Balboa Park, respectively, both Plaintiffs were busking on designated fire lanes in violation of the California Fire Code, subjecting Plaintiffs' constitutional challenges to the affirmative defense of unclean hands. (Doc. No. 6 at 7–9 (citing Cal. Fire Code Regs, title 24, Part 9 § 503.2.1; 503.2.2; 503.4.))

Plaintiffs respond that Defendant provides no evidence that tabling on the public sidewalk behind a red curb in Ocean Beach violates any fire code, or that El Prado is a Fire Apparatus Access Road, and such argument impermissibly goes beyond the sufficiency of Plaintiffs' allegations in the FAC. (Doc. No. 8 at 9.) Plaintiffs further assert they were not cited for blocking fire lanes, but were cited for violating the Sidewalk Vending Ordinance

24-cv-00813-AJB-AHG

for vending without permits, from which Plaintiffs assert they were exempt. (*Id.* at 7.)

"Ordinarily, affirmative defenses . . . may not be raised on a motion to dismiss except when the defense raises no disputed issues of fact." *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018). Here, disputes of fact preclude consideration of Defendant's unclean hands defense at the motion to dismiss stage. For example, Defendant has not provided undisputed evidence that Dorsett was busking in a fire lane when he was cited on a public sidewalk in Ocean Beach on February 1, 2023. (FAC ¶¶ 15–17.) Defendant also has not provided undisputed evidence that Flores was not permitted to perform his magic show in a fire lane in Balboa Park when he received three citations on November 16, 2023. (*Id.* ¶ 36.) That Flores alleges he "was busking in Balboa Park on El Prado" (*id.* ¶ 36), does not end the inquiry because the City of San Diego appears to have designated two "expressive activity areas" immediately adjacent to El Prado's fire lanes (areas 7 and 8), (Doc. No. 9-4), and two additional "expressive activity areas" immediately between two fire lanes in Balboa Park's Plaza de Panama, (areas 9 and 10), (*id.*), demonstrating that some expressive activity may be permissible in the same area. Furthermore, while Court takes judicial notice of the City's publicly available Parks & Recreation webpage titled, "Expressive Activity in Parks," which shows "area maps" where City-designated expressive activity can occur without a permit, the City has not demonstrated that the designated "expressive activity" areas existed at the time Plaintiffs were cited. Accordingly, Defendant's unclean hands affirmative defense does not justify dismissal of Plaintiffs' as-applied First Amendment claim at this stage.

### 3. Selective Enforcement of the Sidewalk Vending Ordinance

Plaintiffs also allege that the City violated the First Amendment by selectively enforcing the Sidewalk Vending Ordinance, permitting PETA to demonstrate in the same El Prado area of Balboa Park where park rangers prohibited Plaintiffs from busking.[5] (FAC

---

[5] Plaintiffs additionally allege a Fourteenth Amendment equal protection claim for the same alleged conduct, which the Court addresses below.

¶¶ 43, 44, 72.) "[D]iscriminatory enforcement of a speech restriction amounts to viewpoint discrimination in violation of the First Amendment." *Foti*, 146 F.3d at 635. "A restriction on speech is viewpoint-based if (1) on its face, it distinguishes between types of speech or speakers based on the viewpoint expressed; or (2) though neutral on its face, the regulation is motivated by the desire to suppress a particular viewpoint." *Hightower v. City & Cnty. of San Francisco*, 77 F. Supp. 3d 867, 883 (N.D. Cal. 2014), *aff'd sub nom. Taub v. City & Cnty. of San Francisco*, 696 F. App'x 181 (9th Cir. 2017). "To prevail in a viewpoint discrimination claim, a plaintiff must establish that the government took action against it '*because of* not merely in spite of' its message." *Id.* (quoting *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009)).

Here, Plaintiffs allege the park rangers enforced the Sidewalk Vending Ordinance against Plaintiffs, but not PETA, because Plaintiffs' speech "was disfavored, while PETA's speech was favored speech." (FAC ¶ 82.) Plaintiffs additionally allege that the City informed Dorsett that his "small painting setup" was impermissibly "obstructing a public sidewalk in El Prado" "even though it left ample room on the sidewalk for members of the public to walk around him," while the City allowed PETA to take up "more than 400-square-feet of a public walkway, also in the El Prado area . . . that in fact did obstruct the public walkway." (*Id.* ¶ 44.) In its motion to dismiss, Defendant does not dispute that PETA and Plaintiffs were treated differently. (Doc. No. 6 at 15.) Instead, Defendant argues the difference in treatment was because "PETA is . . . a worldwide animal rights organization whose advocacy activities fall under the City's [E]xpressive [A]ctivity [O]rdinance," whereas Plaintiffs' activities were subject to the Sidewall Vending Ordinance. (*Id.*)

As articulated above, both Dorsett and Flores alleged to have also been engaged in expressive activity protected by the First Amendment. *See Santopietro*, 73 F.4th at 1023; *White*, 500 F.3d at 954. Defendant does not assert any other reason other than the nature of Plaintiffs' expressive activity to justify the difference in treatment. For example, Defendant does not assert that PETA had applied for and received a permit to protest in El Prado or that unlike PETA, Plaintiffs' tables were more obstructive to traffic flow. (*See generally*

Doc. No. 6, 9.) Accordingly, Plaintiffs sufficiently allege that the City took action against Plaintiffs because of the content of their expressive activity, "not merely in spite of it." *See Hightower*, 77 F. Supp. 3d at 883 (internal quotation marks and citation omitted). Plaintiffs' First Amendment selective enforcement claim withstands Defendant's challenge at the motion to dismiss stage.

For the reasons above, Defendant's motion to dismiss Plaintiffs' as-applied First Amendment Challenge to the Sidewalk Vending Ordinance is **DENIED**.

## C.    Plaintiffs' Fourteenth Amendment Equal Protection Claim (Count 2)

Plaintiffs allege that the City prohibited Plaintiffs from performing their art in Balboa Park on El Prado without a permit, but allowed PETA to gather in the same space, violating Plaintiffs' right to equal protection of the laws under the Fourteenth Amendment.[6] (FAC ¶¶ 77–86.) Specifically, Plaintiffs allege that the City selectively enforced the Sidewalk Vending Ordinance by allowing PETA to "take up more than 400-square-feet of a public walkway, also in the El Prado area of Balboa Park" (*id.* ¶ 44), because "PETA's speech was favored speech" (*id.* ¶ 81), while prohibiting Plaintiffs, including citing Flores, from occupying the same space without a permit "because their speech was disfavored" (*id.* ¶¶ 36, 82, 83). Plaintiffs additionally allege that the City's selective enforcement "was the result of an intentional policy or practice to limit [Plaintiffs'] speech, while promoting more favored speech." (*Id.* ¶¶ 79, 82.) The City disputes that Plaintiffs and PETA are "similarly situated," (Doc No. 6 at 15), arguing that PETA is "a worldwide animal rights organization whose advocacy activities fall under the City's [E]xpressive [A]ctivity [O]rdinance," whereas Plaintiffs' activity falls under the Sidewalk Vending Ordinance, (*id.* at 12, 15).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of*

---

[6] Plaintiffs do not allege whether PETA had a permit to demonstrate in the El Prado area.

*Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "In order for a state action to trigger equal protection review at all, that action must treat similarly situated persons disparately." *Barnes-Wallace v. City of San Diego*, 704 F.3d 1067, 1084 (9th Cir. 2012) (quotation marks and alteration notations omitted).

"The first step in equal protection analysis is to identify the state's classification of groups." *Country Classic Dairies, Inc. v. State of Mont., Dep't of Com. Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988). The Sidewalk Vending Ordinance classifies individuals engaging in "vending" into two groups: sidewalk vendors and individuals engaged in expressive activity protected by the First Amendment. (Doc. No. 6 at 13.) SDMC § 36.0102 defines "sidewalk vendors" as individuals "who sell goods . . . from vending equipment . . . upon a sidewalk." (*Id.* at 12) (quoting SDMC § 36.0102). "Vending equipment" includes "any conveyance, table, pushcart, stand, display, pedal-driven cart, wagon, showcase, rack, or any other free-standing equipment used for vending on the sidewalk." (Doc. No. 5-2 § 36.0102.) By contrast, at the time Plaintiffs were cited, the Sidewalk Vending Ordinance exempted "any vendor or individual engaged solely in artistic performances, free speech, political or petitioning activities, or engaged solely in *vending* of items constituting expressive activity protected by the First Amendment . . . [.]" (*Id.* § 36.0113.)[7]

Because the FAC alleges Plaintiffs and PETA were both engaged in expressive activity protected by the First Amendment, *see Santopietro*, 73 F.4th at 1023; *White*, 500 F.3d at 954, the FAC sufficiently alleges that Plaintiffs and PETA were similarly situated yet treated differently. (*See generally* FAC ¶¶ 44, 77–86.) Additionally, while a distinction in treatment may have been justified if PETA had a permit to engage in expressive activity in the El Prado area, which Plaintiffs did not possess, Defendant has neither argued nor

---

[7] The City represents that in 2024, the City amended the Sidewalk Vending Ordinance's "Non-Applicability" exemption, which "currently states that 'any person engaged in expressive activity authorized by Chapter 6, Article 3, Division 5 of this Code [the Expressive Activity Ordinance]' is exempt from the permit requirements." (Doc. No. 9 at 6.)

24-cv-00813-AJB-AHG

provided any evidence that PETA had a permit to demonstrate. (*See generally* Doc. Nos. 6, 9.) What's more, Defendant asserts that even had Plaintiffs applied for a permit to busk on El Prado, they would have been denied, further suggesting a possible difference in treatment. (*See* Doc. No. 9 at 9 ("Even if Plaintiffs had attempted to obtain a permit to . . . perform on El Prado, neither would have been granted a permit.").) While discovery may elucidate distinctions between PETA's demonstration and Plaintiffs' conduct that justify disparate treatment, at this stage the Court must accept Plaintiffs' allegations as true. Accordingly, Plaintiffs have sufficiently pled an Equal Protection Claim under the Fourteenth Amendment that survives Defendant's motion to dismiss.

The Court **DENIES** Defendant's motion to dismiss Plaintiffs' Fourteenth Amendment Equal Protection claim at this stage.

### D.     Plaintiffs' First Amendment Facial Challenge to the Expressive Activity Ordinance (Count 1)

Plaintiffs assert the Expressive Activity Ordinance unconstitutionally forbids the sale of artwork or is impermissibly vague and chills expressive activity in violation of the First Amendment's Free Speech Clause. (FAC ¶¶ 45–63; Doc. No. 8 at 16.) Defendant argues Plaintiffs' facial challenge should be dismissed because the Expressive Activity Ordinance is a reasonable time, place, and manner restriction on expressive activity. (Doc. No. 13.) Specifically, Defendant states the Expressive Activity Ordinance furthers "public safety, do[es] not suppress speech, and provide[s] for ample alternative channels for communication." (Doc. No. 6 at 11.)

#### 1.  The Expressive Activity Ordinance Regulates Expressive Activity in Public Forums

"When analyzing the validity of a regulation under [the Free Speech] Clause, we 'apply a forum analysis' whose first step involves determining what type of forum is affected by the regulation." *Santa Monica Nativity Scenes Comm. v. City of Santa Monica*, 784 F.3d 1286, 1291 (9th Cir. 2015) (quoting *Flint v. Dennison*, 488 F.3d 816, 830 (9th Cir. 2007)); *see also Camenzind v. California Exposition & State Fair*, 84 F.4th 1102, 1107

(9th Cir. 2023) ("At the threshold, we must specify the contours of the forum at issue.") "Once the forum is identified, we determine whether [the] restrictions on speech are justified by the requisite [legal] standard." *Santa Monica Nativity Scenes Comm.,* 784 F.3d at 1291–92 (quoting *Flint*, 488 F.3d at 830).

The Expressive Activity Ordinance seeks to "adopt reasonable regulations on expressive activity" in "parks, plazas, sidewalks and high-traffic areas . . . [.]" (Doc. No. 5-3 § 63.0501.) As stated above, "[t]he quintessential traditional public forums are sidewalks, streets, and parks." *Am. C.L. Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1099 (9th Cir. 2003); *see also Camenzind*, 84 F.4th at 1108 ("Traditional examples of public fora include streets, parks and sidewalks . . . [.]") Accordingly, the Expressive Activity Ordinance regulates protected expressive activity in traditional public forums.

### 2. Time, Place, and Manner Restriction

In traditional public forums, "the rights of the state to limit expressive activity are sharply circumscribed." *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45, (1983). However, "[d]espite the broad First Amendment protection accorded expressive activity in public parks . . . a municipality may issue reasonable regulations governing the time, place or manner of speech." *Berger*, 569 F.3d at 1036 (quoting *Grossman v. City of Portland*, 33 F.3d 1200, 1205 (9th Cir. 1994)); *see also Hunt v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011) ("The time, place, or manner standard applies to fully protected speech in a public forum."). "[S]treet performances are subject to reasonable time, place, and manner restrictions[.]" *Santopietro,* 73 F.4th at 1023. Accordingly, Plaintiffs' expressive activities are subject to reasonable time, place, and manner restrictions. *Id.*

"To pass constitutional muster, a time, place, or manner restriction must meet three criteria: (1) it must be content-neutral; (2) it must be 'narrowly tailored to serve a significant governmental interest'; and (3) it must 'leave open ample alternative channels for communication of the information.'" *Berger*, 569 F.3d at 1036 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). Because the Expressive Activity Ordinance

regulates where individuals can engage in expressive activity with or without a permit, the Court evaluates the Expressive Activity Ordinance under the reasonable "time, place, or manner" restriction framework.

### i. Content-neutrality

"A speech restriction is content-neutral if it is 'justified without reference to the content of the regulated speech.'" *One World One Fam. Now v. City & Cnty. of Honolulu*, 76 F.3d 1009, 1012 (9th Cir. 1996) (quoting *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293 (1984)). "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward*, 491 U.S. at 791. Additionally, designated "free expression zones" available on a first-come, first-served basis, are content-neutral. *See Camenzind*, 84 F.4th at 1114 ("Free Expression Zones are content-neutral because they are allocated on a first-come, first-served basis."). By contrast, a restriction is content-based "if either the main purpose in enacting it was to suppress or exalt speech of a certain content, or it differentiates based on the content of speech on its face." *A.C.L.U. of Nevada v. City of Las Vegas*, 466 F.3d 784, 793 (9th Cir. 2006).

The City asserts that the Expressive Activity Ordinance is content neutral because "[n]othing in the text of the City's ordinances cited by Plaintiffs state a preference for a ban on art, magic, or any form of expressive speech." (Doc. No. 6 at 10.) Plaintiffs plead that the City's "location-based restrictions . . . turn on the content of . . . Plaintiff's speech," (FAC ¶ 41), but do not otherwise respond to how the Expressive Activity Ordinance is content-based.

The Expressive Activity Ordinance is content-neutral. First, the Ordinance's stated purpose is unrelated to any content of expression. (*See* Doc. No. 5-3, SDMC § 63.0501 (d) ("[T]he purpose of this Division [is] to adopt regulations for persons engaged in *expressive activity* to protect public health and safety, preserve historic and cultural opportunities, and prevent altercations arising from competing uses of space in *parks, plazas, sidewalks*, and *high-traffic areas*.")) Second, it is undisputed that the City's designated "expressive

activity areas" are available on a first-come, first-served basis, (*id.* § 63.0504), which the Ninth Circuit determined is content-neutral. *See Camenzind*, 84 F.4th at 1114. Accordingly, the first factor in the time, place, manner restriction test is met.

### ii.  Narrow Tailoring to Serve a Significant Governmental Interest

"Two primary considerations" govern whether a regulation is narrowly tailored to serve a significant government interest: "(1) whether the significant government interest would be achieved less effectively without the regulation; and (2) whether the regulation burdens substantially more speech than necessary." *Porter v. Gore*, 517 F. Supp. 3d 1109, 1127 (S.D. Cal. 2021), *aff'd sub nom. Porter v. Martinez*, 64 F.4th 1112 (9th Cir. 2023), and *aff'd sub nom. Porter v. Martinez*, 68 F.4th 429 (9th Cir. 2023) (citing *Ward*, 491 U.S. at 798–99). A regulation need not be the "least restrictive" means of serving the relevant government interest to be "narrowly tailored." *Ward*, 491 U.S. at 799. "Rather, '[s]o long as the means chosen *are not substantially broader than necessary* to achieve the government's interest, [ ] the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative.'" *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1227 (9th Cir. 1990) (quoting *id.* at 800). "The government bears the burden of proving that the 'narrowly tailored' and 'alternative communication' prongs are satisfied." *Bay Area Peace Navy*, 914 F.2d at 1227.

The City asserts that the City's ordinances, including the Expressive Activity Ordinance, serve the substantial government interest of preserving public safety and "of preventing congestion . . . by confining distribution, selling, and fund solicitation activities to fixed locations[,]" while still giving Plaintiffs a reasonable opportunity for communication.  (Doc. No. 6 at 9 (citing *Camenzind*, 84 F.4th at 1114 (citations omitted)).) The City does not address whether the Expressive Activity Ordinance is narrowly tailored separate from the Sidewalk Vending Ordinance, which the City argues is narrowly tailored "because the incidental restriction on [] Dorsett's sale of art is no greater than is essential to further . . . the City's stated goals." (Doc. No. 9 at 6.) Plaintiffs plead that the City's

Expressive Activity Ordinance is not narrowly tailored because the designated expressive activity zones are confined to "4-foot by 8-foot marked spaces in undesirable locations[,]" which "severely limit[]" Plaintiffs' exposure to the public and result in "a dramatic loss of revenue for the plaintiffs due to the reduced exposure to the public." (*See* FAC ¶¶ 32, 40, 42.)

Two cases are instructive for evaluating whether the Expressive Activity Ordinance is narrowly tailored. In *Camenzind v. California Exposition & State Fair*, the Ninth Circuit determined the free speech zones were narrowly tailored because they were positioned next to the fairground entry gates, "a prime location that provides speakers with exposure to virtually everyone who enters the fairgrounds." 84 F.4th at 1114. By contrast, in *Ponies Are Miserable v. City of Los Angeles*, the court found the City of Los Angeles's "Free Speech Zone" next to a controversial pony ride business in Griffith Park "greatly limit[ed] Plaintiffs' exposure to their intended audience" where Plaintiffs alleged having "to shout for extended periods of time to attempt to reach distant individuals." *Ponies Are Miserable v. City of Los Angeles*, No. 2:23-CV-08330 HDV SK, 2024 WL 5317298, at *3 (C.D. Cal. May 13, 2024). In *Ponies are Miserable*, the court reasoned, "[a]ccepting these allegations as true, as the Court must for purposes of this [m]otion [to dismiss], the Court cannot say as a matter of law that the Free Speech Zone was narrowly tailored." *Id.*

Here, one of the City's stated purposes of the Expressive Activity Ordinance is to "ensure those engaged in expressive activity are able to engage their intended audiences without having to compete with commercial vendors." (Doc. No. 5-3 § 63.0501(b).) Yet, Plaintiffs allege that in practice, the Expressive Activity Ordinance is not achieving either goal. For example, both Plaintiffs allege "reduced exposure to the public" leading to a "dramatic loss of revenue." (FAC ¶ 42.) Dorsett alleges that the Ocean Beach expressive activity area was "crowded with vendors selling goods," (*id.* ¶ 38), and the Comic Con expressive activity area was "too small to accommodate buskers," (*id.* ¶ 39). At the motion to dismiss stage, accepting Plaintiffs' allegations as true, and construing all inferences in favor of Plaintiffs, without any evidence from the City proving otherwise, the Court cannot

conclude as a matter of law that the City's expressive activity areas are narrowly tailored. *See, e.g., Ponies Are Miserable*, No. 2:23-CV-08330 HDV SK, 2024 WL 5317298, at *3.

### iii.  Ample Alternative Channels for Communication

Finally, "a valid time-place-and-manner regulation must 'leave open ample alternative channels for communication.'" *Hoye v. City of Oakland*, 653 F.3d 835, 858 (9th Cir. 2011) (quoting *Ward*, 491 U.S. at 791). "Several considerations are relevant to this analysis." *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1025 (9th Cir. 2009). Specifically, alternatives are not ample "if the speaker is not permitted to reach the intended audience, if the location of the expressive activity is part of the expressive message, if there is no opportunity for spontaneity, or if the alternatives are overly costly or inconvenient." *Santa Monica Nativity Scenes Comm. v. City of Santa Monica*, No. CV 12-8657 ABC (EX), 2012 WL 12850129, at *10 (C.D. Cal. Nov. 29, 2012), *aff'd*, 784 F.3d 1286 (9th Cir. 2015) (summarizing *Long Beach Area Peace Network*, 574 F.3d at 1025).

Here, the City asserts that because Plaintiffs have a "reasonable opportunity" for communication in the designated expressive activity areas, ample alternatives exist for Plaintiffs to communicate with their intended audiences. (Doc. No. 9 at 7–8.) However, Plaintiffs plead that the expressive area zones designated by the City place Plaintiffs in confining, "undesirable locations," that limit Plaintiffs' reach to their intended audiences, and that are "crowded" with commercial vendors selling goods, ultimately resulting in Plaintiffs' "dramatic loss of revenue." (FAC ¶¶ 35, 38, 40, 42.)

Again, examination of analogous case law is instructive. In *Camenzind,* the Ninth Circuit found that the "Free Expression Zones" provided ample alternative channels for communication because they were "directly outside the entry gates" of the California Exposition and State Fair fairgrounds, offered "a prime location that provide[d] speakers with exposure to virtually everyone who enters the fairgrounds" and the plaintiff was unable to point to any preferable space in the exterior area. *Camenzind*, 84 F.4th at 1106, 1114.  By contrast, in *Bay Area Peace Navy,* the Ninth Circuit found that a 75-yard security

zone around the reviewing stand for Navy's "Fleet Week" in San Francisco did not afford peaceful protestors ample alternative channels of communication, because it prevented them from reaching their intended audience of visitors to Fleet Week. 914 F.3d at 1229. Here, accepting Plaintiffs' allegations of being relegated to "secluded areas" that resulted in "a dramatic loss of revenue . . . due to the reduced exposure to the public," (FAC ¶ 42), as true and construing all inferences in favor of Plaintiffs, Plaintiffs sufficiently allege that the Expressive Activity Ordinance does not provide ample alternative channels of communication.

While the Expressive Activity Ordinance is content neutral, Defendant has not met its burden of showing that the Expressive Activity Ordinance is narrowly tailored or leaves open ample alternative channels of communication. Defendant's arguments may be better suited following discovery when the record is more fully developed. Accordingly, the Court finds that Plaintiffs sufficiently plead that the Expressive Activity Ordinance does not constitute a reasonable time, place, and manner restriction. The Court **DENIES** Defendant's motion to dismiss Plaintiffs' First Amendment challenge to the Expressive Activity Ordinance.

**E.      Plaintiffs' Fourteenth Amendment Due Process Challenge to the Expressive Activity Ordinance and Sidewalk Vending Ordinance (Count 3)**

Plaintiffs challenge both the Expressive Activity Ordinance and Sidewalk Vending Ordinance as unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment. (FAC ¶¶ 19, 87–92.) "An ordinance may be void for vagueness because either it (1) fails to give a 'person of ordinary intelligence a reasonable opportunity to know what is prohibited;' (2) 'impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application;' or (3) 'abut(s) upon sensitive areas of basic First Amendment freedoms, [ ] operat[ing] to inhibit the exercise of (those) freedoms.'" *Hunt*, 638 F.3d at 712 (quoting *Grayned v. City of Rockford*, 408

24-cv-00813-AJB-AHG

U.S. 104, 108 (1972)). "Whether a provision is vague for lack of fair notice is an objective inquiry." *Kashem v. Barr*, 941 F.3d 358, 371 (9th Cir. 2019). "[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 19 (2010) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). A court should uphold a vagueness challenge "only if the enactment is impermissibly vague in all of its applications." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 (1982). By contrast, a court "may reject a vagueness challenge when it is clear what the ordinance as a whole prohibits." *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1274 (9th Cir. 2017). The Court first addresses Plaintiffs' vagueness challenge to the Expressive Activity Ordinance, and then examines Plaintiffs' vagueness challenge to the Sidewalk Vending Ordinance.

### 1. Plaintiffs' Vagueness Challenge to the Expressive Activity Ordinance

Plaintiffs allege that the Expressive Activity Ordinance "fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited" and is unconstitutionally vague. (FAC ¶¶ 55, 62, 90 (quoting *Hunt v. City of Los Angeles*, 638 F.3d 703, 712 (9th Cir. 2011)).) First, Plaintiffs allege that the terms "merchandise" and "mass-produced" are not defined, muddying what kind of merchandise is subject to regulation. (FAC ¶ 91.) Second, Plaintiffs allege that the Expressive Activity Ordinance is "internally contradictory" in that it "refers to regulation of 'mass produced' items that are made through 'the use of brush, pastel, crayon, pencil, stylus or other object.'" (*Id.*) Plaintiffs allege that the overall lack of clarity enables City officials and law enforcement to arbitrarily enforce the law. (*Id.* ¶¶ 55, 62, 90, 91.)

Both Plaintiffs allege specific points of confusion. Dorsett alleges the Expressive Activity Ordinance's definition of "expressive activity" includes "the sale of artwork," but excludes "the sale or creation of handcrafts" and "the creation or sale of mass-produced merchandise or visual art." (*Id.* ¶¶ 46–51; *see also* Doc. No. 5-3, SDMC § 63.0502.) Dorsett alleges it is unclear to what extent, if any, his paintings may be considered "mass-produced," and whether his palm frond roses fit the definition of "handcrafts" such that he

would be subject to the Sidewalk Vending Ordinance as a vendor rather than the Expressive Activity Ordinance as an artist. (FAC ¶¶ 46–51.)

Flores alleges similar confusion as to whether his magic show performances are considered "expressive activity." (*Id.* ¶¶ 46, 52–53.) The Expressive Activity Ordinance includes "performances" within the definition of "expressive activity." (Doc. No. 5-3, SDMC Art. 3, Div. 5 § 63.0502.) However, it also stipulates that "[v]endors of . . . *services* shall comply with the Sidewalk Vending Regulations," (*id.* § 63.0505), and defines "services" as having the same meaning as in SDMC section 36.0102. (*Id.* § 63.0502.) SDMC Section 36.0102 defines "services" as "activities involving the performance of work for others or the provision of intangible items that cannot be returned once they are provided . . . includ[ing] hair braiding, face painting, massage, yoga, fortune telling, tattooing, and dog training." (Doc. No. 5-2, SDMC § 36.0102*; see also* FAC ¶¶ 46, 52–53.)

In Defendant's motion to dismiss, the City argues that the Expressive Activity Ordinance is well-defined and therefore constitutional. The City asserts, "Plaintiff Dorsett was plainly vending on February 1, 2023," so "he was subject to the City's vending ordinances" rather than the Expressive Activity Ordinance. (Doc. No. 6 at 12.) The City does not address Flores's vagueness challenge of whether magic performances are considered "expressive activity" under the Expressive Activity Ordinance. (*See generally id.* at 12–13.)

The Court interprets the Expressive Activity Ordinance according to its text and ends there if the language is plain. *Bostock v. Clayton County*, 590 U.S. 644, 674 (2020). Here, the plain text of the Expressive Activity Ordinance defines "expressive activity" to include "the sale of artwork." (*See* Doc. No. 5-3, SDMC § 63.052.) The Court therefore rejects the City's argument that Dorsett's selling of original art is "clearly exclude[d]" from the purview of the Expressive Activity Ordinance. (Doc. No. 6 at 12.) However, to the extent Dorsett alleges selling both original paintings and palm frond roses, which could be considered a "handcraft" excluded from the definition of "expressive activity," the

Expressive Activity Ordinance does not clearly define whether he may sell both original paintings and palm frond roses within an expressive activity area without a permit, or whether selling palm frond roses categorizes Dorsett as a vendor, requiring Dorsett to adhere to the Sidewalk Vending Ordinance's requirements, including applying for a vending permit. Dorsett sufficiently alleges that the lack of guidance could subject individual buskers to arbitrary enforcement. *See Hunt*, 638 F.3d at 712.

As to Flores, neither "magic shows" nor "juggling" appear in the Expressive Activity Ordinance's definition of "expressive activity." (*See* Doc. No. 5-3, SDMC § 63.052.) And neither activity appears in the enumerated list of "services," which are subject to the Sidewalk Vending Ordinance, either. (*See* No. 5-2, SDMC § 36.0102.) The Court finds that magic shows and juggling are sufficiently similar to face painting and fortune telling, which the Expressive Activity Ordinance defines as "services," such that a person of ordinary intelligence may be confused as to what forms of street performances are excluded from the Expressive Activity Ordinance, and which are covered.[8]

Because Plaintiffs adequately plead how the Expressive Activity Ordinance may fail to give a "person of ordinary intelligence a reasonable opportunity to know what is prohibited," *Hunt*, 638 F.3d at 712, and "when First Amendment freedoms are at stake, an even greater degree of specificity and clarity of laws is required," *Foti*, 146 F.3d at 638, the Court finds that Plaintiffs adequately allege that the Expressive Activity Ordinance is impermissibly vague.

The Court **DENIES** Defendant's motion to dismiss Plaintiffs' Fourteenth Amendment Due Process challenge to the Expressive Activity Ordinance.

### 2. Plaintiffs' Vagueness Challenge to the Sidewalk Vending Ordinance

---

[8] Further illustrating discrepancies in the definitions of "expressive activity" and "services" amongst the two Ordinances, the Expressive Activity Ordinance enumerates that "face painting" is an "[i]tem[] . . . inherently communicative in nature" that constitutes "expressive activity." (Doc. No. 5-3, SDMC § 63.052.) However, the Sidewalk Vending Ordinance includes "face painting" as one of several "[s]ervices" excluded from "expressive activity" in the Expressive Activity Ordinance. (Doc. No. 5-2, SDMC § 36.0102.)

Plaintiffs also allege that the Sidewalk Vending Ordinance is "impossibly vague" because the "Non-Applicability" exemption left "individuals of ordinary intelligence" unsure of what activity was subject to the Sidewalk Vending Ordinance (including its permit requirement), and which activities were exempt. (FAC ¶¶ 19, 92.) The City responds that the "Non-Applicability" exemption "has been amended since Plaintiff Dorsett was cited" and "currently states that 'any person engaged in expressive activity authorized by Chapter 6, Article 3, Division 5 of this Code [the Expressive Activity Ordinance]' is exempt from the permit requirements." (Doc. No. 9 at 6.)  That is, individuals are exempt from the Sidewalk Vending Ordinance's permit requirements to the extent they engage in expressive activity in one of the City's designated expressive activity areas. (*Id.*)

Here, because the parties do not dispute that the City has amended the challenged "Non-Applicability" exemption to stipulate that individuals engaged in expressive activity may do so in an expressive activity area designated by the City without a permit, the Court finds Plaintiffs' vagueness challenge moot. *See Dep't of Fish & Game v. Fed. Subsistence Bd.*, 62 F.4th 1177, 1181 (9th Cir. 2023) ("Generally, an action is mooted when the issues presented are no longer live and therefore the parties lack a legally cognizable interest for which the courts can grant a remedy.") Even if the mootness doctrine did not apply, the plain language of the Sidewalk Vending Ordinance's "Non-Applicability" section was not vague. It clearly exempted artistic expression and street performances as First Amendment protected activity. (*See* Doc. No. 5-2, SDMC § 36.0113.)

Accordingly, the Court **DISMISSES** Plaintiffs' due process vagueness challenge to the Sidewalk Vending Ordinance **WITHOUT LEAVE TO AMEND**. *See Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018) ("Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal.").

## V.    CONCLUSION

For the reasons stated herein, the Court **DENIES** Defendant's motion to dismiss as to Plaintiffs' First Amendment claim (Count 1), Fourteenth Amendment Equal Protection claim (Count 2), and Plaintiffs' Fourteenth Amendment Due Process claim with respect to

the Expressive Activity Ordinance (Count 3). The Court **GRANTS** Defendant's motion to dismiss Plaintiffs' Fourteenth Amendment Due Process vagueness challenge to the Sidewalk Vending Ordinance (FAC ¶ 92), and **DISMISSES** Plaintiffs' claim as moot and **WITHOUT LEAVE TO AMEND**. The City must file an answer to Plaintiffs' FAC <u>no later than March 24, 2025</u>.

      **IT IS SO ORDERED.**


Dated:  February 24, 2025

Hon. Anthony J. Battaglia
United States District Judge